ERICKSON v. PENNSYLVANIA R. CO.

(Circuit Court of Appeals, Third Circuit. May 18, 1909.)

No. 28.

1. RAILROADS (§ 460*)—FIRES—CONTRIBUTORY NEGLIGENCE OF OWNER OF PROPERTY.

Where a railroad company maintains a platform on its right of way for public use in loading and unloading its cars, and as a necessary incident to its use for that purpose more or less litter and refuse falls upon the ground, a shipper using the same and making no more than the usual

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

amount of litter is under no duty to remove the same, and his failure to do so does not constitute contributory negligence, which will preclude him as a matter of law from recovering for a loss of property from a fire starting by an engine, but communicated to his property through such accumulated refuse.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 460.*]

2. RAILROADS (§ 480*)—FIRES—ACTIONS—PRESUMPTIONS AND BURDEN OF PROOF —NEW JERSEY STATUTE.

Under Act N. J. April 14, 1903 (P. L. p. 673) § 57, which provides that, in an action for an injury done to property by fire communicated from an engine of a railroad company in violation of the provisions of the act, "proof that the injury was communicated from an engine shall be prima facie evidence of such violation, subject to be rebutted by evidence," etc., where a plaintiff proves that a fire which destroyed his property was communicated from an engine on defendant's railroad, the presumption of a violation of the statute thus raised must be rebutted by evidence, and the question is one for the jury.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 480.*]

In Error to the Circuit Court of the United States for the District of New Jersey.

George S. Silzer, for plaintiff in error.

Alan H. Strong, for defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and BRADFORD, District Judge.

GRAY, Circuit Judge. This case comes up on writ of error from the Circuit Court for the District of New Jersey, where the plaintiff was nonsuited in his action against the defendant corporation, for damages caused by fire from defendant's locomotive communicating with the plaintiff's buildings.

Plaintiff's buildings were immediately on the side of the railroad right of way, and about six inches therefrom. In this building, plaintiff conducted the business of hay pressing, and storing baled hay. On its right of way, next to plaintiff's property, the railroad company had built a platform for loading cars. This platform extended from plaintiff's building to a siding between said platform and one of the main tracks of the defendant company. On this siding, the defendant placed cars when necessary to receive goods for transportation and to be loaded from said platform, the platform being about flush with the floor of a car. This platform was used by the plaintiff and by those of the public to whom it was convenient and who desired to ship goods therefrom. Plaintiff's baleroom, adjoining this platform and opening upon it, stood upon posts about $3\frac{1}{2}$ feet from the ground. On the day before the fire in question, plaintiff had been loading bales of hay from his baleroom, across the platform into a freight car placed upon the siding of the defendant, adjacent thereto. The loading of the car from the baleroom over the platform having been completed late in the afternoon, the car was allowed to stand on the siding next the platform until the next morning, when, about 8:30 o'clock, one of the defendant's trains passed rapidly along the main track nearest the siding. As this train was passing this

platform, there were dropped or ejected, presumably from the fire box of the locomotive, a quantity of live coals and cinders. Sparks were also seen coming from the smokestack. A strong west wind was blowing from the railroad towards plaintiff's buildings, which swept the fire, immediately after the passing of the train, under the platform and into the rubbish under plaintiff's building, from which it was communicated to the building itself. In a short time, the car, platform, and plaintiff's building were destroyed.

It was in evidence that there was a quantity of loose hay extending from under the car and platform towards the rubbish, waste paper, etc., under plaintiff's building, and the testimony was that the fire from the burning coals dropped by the locomotive was communicated to this loose hay and thence to the rubbish under plaintiff's building. A statute of New Jersey, passed in 1903 (Act April 14, 1903; P. L. p. 673), provides as follows:

"56. Every company or person operating or using any railroad shall take and use all practicable means to prevent the communication of fire from any engine used by them in passing along or being upon such railroad to the property, of whatever description, of any owner or occupant of any land adjacent or near to said railroad, and shall provide such engine with a screen or cover in the smokestack so as to arrest and prevent, as much as practicable, the escape of fire; any company or person refusing or neglecting to make such provision shall forfeit for every such refusal or neglect one hundred dollars to any person who may sue for the same, to be recovered, with costs, in an action upon contract in any court having cognizance thereof, one-half of the sum to go to the person suing and one-half to the state for the public school fund.

"57. When injury is done to property by fire communicated from an engine of any company or person in violation of the foregoing section, such company or person shall be liable in damages to the person injured; and in every action for an injury done to the property of any person by fire communicated from an engine in violation of the preceding section of this act, proof that the injury was communicated from an engine shall be prima facie evidence of such violation, subject, nevertheless, to be rebutted by evidence of the taking and using all practicable means to prevent such communication of fire as by said section required; it shall be lawful for any railroad company to insure such property exposed to loss by fire communicated from its engines, and such company shall have an insurable interest therein."

There can be little or no doubt that the fire which destroyed plaintiff's building was communicated from the locomotive of the train passing immediately before its outbreak. At the close of the plaintiff's evidence, a motion for nonsuit was made by defendant's counsel, and granted by the court, the learned judge saying:

"The only conclusion from the evidence which the jury could draw is, that the fire originated on the defendant's lands under or near the platform. The plaintiff's own testimony is strongly to this effect, and all the other evidence is in harmony with it. It apparently caught from combustible matter lying on the defendant's land at that place. There is, however, no evidence of there having been any litter or other combustibles at that point prior to the time of the fire.

"The evidence shows that in loading cars at that point, some straw and hay fell through the cracks on either side of the platform, and the jury, if the case were left to them, would naturally and necessarily infer that it was this straw and litter which caught fire. This was put there by the plaintiff in the course of his business; I think it was negligence to allow it to remain there, and that such negligence contributed to his injury. But if it were

the duty of the defendant to remove it, it would be allowed a reasonable time to discharge its duty before it could be deemed negligent. The evidence shows that this car had just been loaded, and was still standing on the track. Under the circumstances, which are undisputed, I think the question of reasonable time thus presented, is a question of law rather than of fact, and as such I must conclude that the defendant has not been shown to be negligent in that respect.

"In short, so far as the evidence discloses, if there had been no litter on the defendant's property, there would have been no fire. This litter was put there and allowed to remain there by the plaintiff, and as its being there undoubtedly contributed to the plaintiff's injury, I feel constrained to grant the motion for a nonsuit. It was the causal connection between defendant's negligence and the injury, without which the latter would not have happened."

We cannot agree as to this finding of contributory negligence on the part of the plaintiff, as a matter of law. It appears from the evidence that the scattered hay on defendant's right of way, under the car and under the platform, was presumably dropped through the spaces on either side of the platform, while the hay was being handled between plaintiff's baleroom and the freight car, these spaces being between the platform and defendant's baleroom and between the platform and the freight car. It is not shown in what quantity this litter existed under the car and platform, just before the fire, and we are not to presume that its quantity was greater than was to be expected from the delivery of the 100 bales or more from defendant's platform into the freight car. The platform was a public one erected by defendant on its own premises, for the purposes of its freight traffic. There was necessarily incident to the delivery and reception of bulky goods from shippers, for transportation by defendant, a certain amount of litter and refuse. Such conditions appertain to the business in which defendant was engaged. It invited the delivery of goods upon this platform for shipment, and if the litter or waste material remaining on the railroad premises was unavoidable, and nothing more than what was usually attendant upon the transaction of such business, no duty devolved upon the shipper to remove the same. On the contrary, if the accumulation of such material presents a danger to adjoining property from its liability, under favoring conditions, to communicate fire, it is the duty of the railroad company to remove the same. Such an accumulation may come from the delivery of goods by a number of shippers, and it would be unreasonable to require that each of them should, after finishing his delivery, return to defendant's premises to sweep up whatever usual and unavoidable litter had been made thereby. We think, therefore, at this stage of the case, the learned judge of the court below erred in finding the plaintiff guilty of contributory negligence, as a matter of law.

It is to be observed that, by section 57 of the New Jersey statute, above referred to, it is enacted that:

"In every action for an injury done to the property of any person by fire communicated from an engine, in violation of the preceding section of this act, proof that the injury was communicated from an engine shall be prima facie evidence of such violation, subject, nevertheless, to be rebutted by evidence of the taking and using of practicable means to prevent such communication of fire as by said section required."

The court below seems to have overlooked this provision of the law, in deciding, as a further ground of nonsuit, that if it were the duty of the defendant to remove this loose hay and litter, the question of reasonable time within which this should be done, was, under the circumstances, a question of law, rather than of fact, and in concluding that defendant had not been shown to be negligent in that respect. There was admittedly proof that the fire, and therefore the injury, was communicated from an engine of the defendant. There was, therefore, prima facie evidence of violation by the defendant of the duty imposed upon it by the statute. That is, there was a presumption of negligence which the defendant must rebut, in order to relieve it therefrom. Whether it has done so, is clearly a question for the jury.

The judgment below is therefore reversed, with directions for further proceedings consistent with this opinion.